IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN B. WINEBURGH and RACHEL SILL,<br><br>             *Plaintiffs*,<br><br>    v.<br><br>JAXON INTERNATIONAL, LLC and BRADEN RICHTER,<br><br>             *Defendants*. | CIVIL ACTION<br>NO. 18-3966 |

**PAPPERT, J.**                                                                                         March 20, 2019

<u>**MEMORANDUM**</u>

      Justin Wineburgh and Rachel Sill sued Jaxon International, LLC and its manager Braden Richter for breach of warranty, breach of contract and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. The claims arise from Wineburgh and Sill's purchase of furniture for their Philadelphia apartment; some pieces were delivered damaged, and some were not delivered at all. Both Jaxon, a furniture company based in Los Angeles, and Richter, a citizen of California, move to dismiss for lack of personal jurisdiction. The Court denies the Motion for the reasons that follow.

I

      Wineburgh and Sill live in an apartment on Rittenhouse Square in Philadelphia. (Compl. ¶¶ 1–2, ECF No. 1.) In October of 2017, Sill traveled to California and visited Jaxon's furniture showroom in Los Angeles. (Pls.' Resp. Mot. Dismiss Ex. 1 ("Sill Aff.") ¶¶ 4–5, ECF No. 10-1; Compl. ¶ 11.) In the showroom, Sill met Richter. (Sill Aff. ¶ 6.)

1

She told Richter she needed furniture for her apartment in Philadelphia, where she and her fiancé live. (*Id.* at ¶ 7.) Richter told her Jaxon could deliver custom furniture to Philadelphia. (*Id.* at ¶¶ 8–9.) Sill then had "several discussions" with Jaxon employees about her design preferences and her apartment's size and dimensions, and she made "subsequent visits" to the showroom. (Compl. ¶¶ 17–18; Sill Aff. ¶ 11.) While still in California, she agreed to purchase forty-one pieces of Jaxon furniture for approximately $96,898.00. (*Id.*; Compl. ¶ 18); *see also* (Compl. Ex. B).

Wineburgh and Sill allege that Richter gave them "personal assurances that he would oversee and be responsible for the entire project, [and] that he would personally come to Philadelphia to assure the proper execution of the job."[1] (Compl. ¶ 16; Sill Aff. ¶ 9.) Sill returned home to Pennsylvania after ordering the furniture. (Sill Aff. ¶ 14.) Richter and other Jaxon employees continued to communicate with her by telephone, text message and email about her order. (*Id.* at ¶ 14–17.)

Some of the furniture was delivered to Wineburgh and Sill's apartment in April of 2018 by Titan Van Lines, an "independent contractor" hired by Jaxon. (*Id.* at ¶ 18; Richter Aff. ¶ 24, ECF No. 9-3.) Richter did not travel to Philadelphia to oversee the installation. (Compl. ¶ 22.) Instead, Richter sent Christopher Ritchie, who introduced himself to Wineburgh and Sill as Jaxon's "partner," to oversee the delivery and

---

[1] Richter, for his part, contends that he "mentioned in passing during [his] meeting with Rachel Sill in Los Angeles, in October 2017, that if I happened to be on the East Coast when the furniture arrived, I would stop by plaintiffs' apartment." (Second Richter Aff. ¶ 1, ECF No. 11-1.)

2

installation.[2] (Sill Aff. ¶ 19.) Many of the furniture pieces were damaged when they arrived. (Compl. ¶¶ 23, 25.) Some pieces did not fit in the apartment. (*Id.* at ¶ 27–28.) Other pieces were not delivered at all, but rather sent to "an unknown storage facility in Pennsylvania where it is believed [they] sustained even further damage." (*Id.* at ¶ 24.) Wineburgh and Sill also allege that the walls, ceiling and a door frame in their apartment were damaged during the delivery process. (*Id.* at ¶ 29–30); *see also* (Compl. Ex. D). Ritchie, who stayed overnight in Philadelphia to monitor the delivery, "repeatedly contacted Jaxon" to report these issues. (Sill Aff. ¶ 20.)

In the days and weeks after the delivery, Sill had "numerous" phone, text message and email conversations with Jaxon employees to discuss the damage. (*Id.* at ¶ 23; Compl. ¶ 26.) Richter and other Jaxon employees told Wineburgh and Sill they would "timely and reasonably address[ ] and resolve[ ]" the damage, but they have not yet done so. (Compl. ¶ 32–33.) Wineburgh and Sill have since rented furniture for the apartment. (*Id.* at ¶ 38.)

Wineburgh and Sill filed this lawsuit on September 13, 2018. The Complaint asserts claims for violations of the UTPCPL (Count I) and breach of warranty (Count II) against Jaxon and Richter and a breach of contract claim (Count III) against Jaxon.[3]

---

[2]   According to Richter, "when [he] explained to Ms. Sill, at the time the furniture was ready to ship from Los Angeles to Philadelphia, that [he] was not planning to be on the East Coast, she demanded that [he] make a specific trip to Philadelphia." (Second Richter Aff. ¶ 1.) "That's the reason," Richter says, he "requested that Christopher Ritchie do [him] the favor of going to plaintiff's apartment." (*Id.*) Richter states that Ritchie is "longtime acquaintance [of his] who owned a furniture store and design company in . . . Maryland." (*Id.* at ¶ 2.) Ritchie affirms that he agreed to "do [Richter] a favor" by traveling to Wineburgh and Sill's apartment when the furniture arrived. (Ritchie Aff. ¶ 4, ECF No. 11-2.)

[3]   The Court has subject matter jurisdiction under 28 U.S.C. § 1332. Wineburgh and Sill are citizens of Pennsylvania, (Compl. ¶¶ 1–2), Jaxon is a California corporation with its principal place of business in California, (*id.* at ¶ 3), and Richter is a citizen of California. (*Id.* at ¶ 4.) The amount in controversy exceeds $75,000. (*Id.* at ¶ 5.)

3

Jaxon and Richter jointly move to dismiss for lack of personal jurisdiction. (ECF No. 9.) Both parties submitted affidavits and other evidence regarding Jaxon and Richter's contacts with Pennsylvania.

II

Once challenged, Plaintiffs bear the burden to establish personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). Where, as here, the Court does not hold an evidentiary hearing, Plaintiffs need only establish a *prima facie* case of personal jurisdiction. *Id.* (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). They may use "affidavits or other competent evidence" to demonstrate "with reasonable particularity" sufficient contacts between Defendants and the forum. *Lehigh Gas Wholesale, LLC v. LAP Petroleum, LLC*, 2015 WL 1312213 at *2 (E.D. Pa. Mar. 23, 2015) (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009), *O'Connor*, 496 F.3d at 316 and *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). The Court accepts Plaintiffs' factual allegations as true. *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales*, 384 F.3d at 97).

Courts sitting in diversity apply the law of the forum state to determine whether jurisdiction is proper. Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b); *Mellon Bank*, 960 F.2d at 1221. Accordingly, the Court must ensure Defendants have "certain minimum contacts with Pennsylvania such that the maintenance of the suit does not offend traditional notions of fair play and substantial

4

justice." *O'Connor*, 496 F.3d at 316–17 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"[W]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant."[4] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (citation omitted). To determine whether specific jurisdiction exists, the Court considers whether Defendants "purposefully directed [their] activities" at the forum state and whether the litigation "arise[s] out of or relate[s] to" at least one of those activities. *O'Connor*, 496 F.3d at 317 (citations omitted). Once these two requirements have been met, jurisdiction is "presumptively constitutional," and the Court may consider whether the exercise of jurisdiction otherwise "comports with fair play and substantial justice." *Id.* at 317, 324 (quoting *Burger King*, 471 U.S. at 476–77).[5]

---

[4] There are two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984). The Court exercises general jurisdiction if the defendant's affiliations with the forum state are so "'continuous and systematic' as to render [it] essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 564 U.S. at 924).

Although Plaintiffs argue in a footnote, *see* (Pls.' Mem. 11 n.4), that "Richter admitted . . . that Defendants have done previous business . . . in Pennsylvania" and that "Jaxon's website is interactive and accessible form Pennsylvania," Plaintiffs cannot establish general jurisdiction. Richter is domiciled in California, and this is not an "exceptional case" in which Jaxon is essentially at home in Pennsylvania. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Jaxon has no employees, offices, bank accounts or regular business operations in Pennsylvania, and an "allegation that [it] transacts business, even substantial business, in Pennsylvania is insufficient" to establish general jurisdiction. *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 206 F. Supp. 3d 1026, 1031 (E.D. Pa. 2016), *aff'd*, 697 F. App'x 119 (3d Cir. 2017) (citations omitted).

[5] Courts typically assess specific jurisdiction on a claim-by-claim basis, but "it may not be necessary to do so for certain factually overlapping claims." *Id.* at 317 n.3 (citing *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001)). Here, Plaintiffs' claims arise from the same set of facts, so the Court will analyze them together. *See Spiro v. Allied Bldg. Prod. Corp.*, 2013 WL

A

To determine whether Defendants purposefully directed their activities at Pennsylvania, the Court considers whether they "deliberate[ly] target[ed]" the state such that they may "reasonably anticipate being haled into court [here]."[6] *O'Connor*, 496 F.3d at 317; *Lehigh Gas*, 2015 WL 1312213 at *3 (quoting *Gen. Elec.*, 270 F.3d at 150). This step "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (citations omitted). Physical entry into the forum state is not required. *O'Connor*, 496 F.3d at 317 (citing *Burger King*, 471 U.S. at 476 and *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)).

Accepting as true Wineburgh and Sill's allegations and Sill's affidavit, Plaintiffs have made a *prima facie* case that Jaxon and Richter purposefully directed their activities at Pennsylvania. When Sill met Richter, she told him she lived in Pennsylvania and needed furniture for her Philadelphia apartment. (Sill Aff. ¶ 6–7); *see Mellon Bank*, 960 F.2d at 1223 (finding requisite contacts where, *inter alia*, defendants were "well aware, or should have been, that they were dealing with a Pennsylvania [citizen]"). Sill did not agree to purchase Jaxon furniture until Richter

---

5270772 at *5 (E.D. Pa. Sept. 17, 2013) (jointly analyzing specific jurisdiction over UTPCPL and breach of contract claims).

[6] In their briefs, the parties do not distinguish between Jaxon's and Richter's contacts with Pennsylvania. Because Plaintiffs allege that Richter himself, acting in the scope of his employment, had sufficient contact with Pennsylvania, the Court will likewise analyze Defendants' contact with Pennsylvania jointly. *See Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482–83 (3d Cir. 1993) (conducting one analysis of corporate and individual defendants' contacts with Pennsylvania). *See also FlagHouse, Inc. v. ProSource Dev., Inc.*, 528 F. App'x 186, 189 (3d Cir. 2013) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)) ("Although it is true that 'jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him,' as long as a defendant has sufficient contacts with the forum state, he can be subject to personal jurisdiction in that state.").

assured her it could be shipped to Pennsylvania. (Sill Aff. ¶ 8–9, 11.) Richter also told her he would personally travel to Philadelphia to oversee the furniture's installation. (Compl. ¶¶ 16; Sill Aff. ¶ 9.) After Sill returned to Pennsylvania, Richter communicated with her by phone, text message and email about the furniture. (Sill Aff. ¶ 15–17); *see Grand Entm't Grp.*, 988 F.2d at 482 (citations omitted) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). Jaxon sent the furniture to Pennsylvania, where Wineburgh and Sill discovered that many of the pieces were damaged or missing. (Compl. ¶¶ 23–28.)

Christopher Ritchie's trip to Philadelphia also supports the Court's exercise of specific jurisdiction. Taking Wineburgh and Sill's allegations as true, they have made a *prima facie* case that Ritchie acted as Jaxon and Richter's agent when he entered Philadelphia. *See Spiro v. Allied Bldg. Prod. Corp.*, 2013 WL 5270772 at *5 (E.D. Pa. Sept. 17, 2013) (quoting *D'Jamoos ex rel. Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 108 (3d Cir. 2009)) ("[T]o overcome a motion to dismiss for lack of personal jurisdiction under an agency theory, a plaintiff must only "make a prima facie showing of the connection between the actions of the agent and the principal");[7] *Grand Entm't Grp.*, 988 F.2d at 483 ("Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction.") Instead of travelling to Philadelphia himself, Richter sent Ritchie to oversee the delivery. (Sill Aff. ¶ 19.) Ritchie identified himself to Plaintiffs as Jaxon's "partner" and communicated with Jaxon employees from

---

[7] Under Pennsylvania law, the three elements of agency are "manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000) (internal citations omitted).

7

Pennsylvania to report issues with the delivery. (*Id.* at ¶¶ 19–20.) Even after Ritchie left Pennsylvania, Plaintiffs communicated with him about repairing the furniture and fixing the damage to their apartment. (*Id.* at ¶ 25.)

Jaxon and Richter's numerous contacts with Pennsylvania were not random, fortuitous or attenuated. They deliberately solicited business from Pennsylvania residents, communicated with Wineburgh and Sill in Pennsylvania by phone, text message and email over several months, shipped furniture to Philadelphia and sent Ritchie to Pennsylvania on their behalf.[8] These contacts establish that Jaxon and Richter should have reasonably anticipated being sued here. Moreover, Wineburgh and Sill's claims clearly "arise out of or relate to" these contacts. *See O'Connor*, 496 F.3d at 324 ("It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims.").

B

Courts typically look to factors enumerated in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), to determine whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.[9] *See Mellon Bank*, 960 F.2d at 1226. However, the Court need not undertake this analysis if

---

[8] To the extent Defendants argue they were not obliged under their contract to travel to Pennsylvania to oversee the delivery, the Court is required to accept as true Wineburgh and Sill's allegation that Richter promised to come to Philadelphia for the delivery. In addition, the Third Circuit Court of Appeals has held that courts are "not narrowly confined to reviewing the contractual obligations of the parties" in a minimum contacts analysis. *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir. 1990). "[W]e must assess the contacts actually made," even if those contacts were not required by contract. *Id.* at 700–01.

[9] These factors include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies, and the procedural and substantive interests of other nations. *O'Connor*, 496 F.3d at 324 (internal citations and quotation marks omitted).

8

Defendants do not present a "compelling case that . . . jurisdiction [is] unreasonable." *Id.* (citing *Burger King*, 471 U.S. at 475); *O'Connor*, 496 F.3d at 324. Where, as here, Defendants "have limited their argument to whether they had sufficient minimum contacts with the Commonwealth" and "make no mention in their brief of the other factors the Supreme Court has considered in determining whether a specific assertion of jurisdiction is unreasonable," it is "not an appropriate case" to consider factors bearing on fair play and substantial justice. *Mellon Bank*, 960 F.2d at 1226–27; *see also Grand Entm't Grp.*, 988 F.2d at 483 ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.") In the absence of any challenge to the presumption that jurisdiction is constitutional, *see O'Connor*, 496 F.3d at 324, the Court will exercise specific jurisdiction over Jaxon and Richter.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.