IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN B. WINEBURGH AND RACHEL SILL, *Plaintiffs,* v. JAXON INTERNATIONAL, LLC, et al., *Defendants.* | CIVIL ACTION NO. 18-3966 |

**PAPPERT, J.**                                                                                     April 27, 2020

**MEMORANDUM**

      Justin Wineburgh and Rachel Sill sued Jaxon International, LLC, a furniture company, and its manager Braden Richter for breach of warranty, breach of contract and violations of Pennsylvania's Unfair Trade Practices and Consumer Protect Law. These claims arise from Wineburgh and Sill's purchase of furniture for their Philadelphia apartment.[1] The parties have engaged in discovery and during the deposition of Richter, Plaintiffs learned that a second company—Coda Industries, LLC—was involved in the manufacturing, upholstering and altering of some of the furniture they purchased. Richter is the sole owner of Coda.

      Plaintiffs now seek to amend their Complaint to add claims against Coda for breach of implied warranty of merchantability and violations of the UTPCPL, as well as claims against all Defendants for civil conspiracy and alter ego and/or single entity

---

[1]     The Court summarized the factual allegations of the Complaint in a prior memorandum. *See* (ECF No. 15). The factual allegations in the proposed Amended Complaint are largely the same, with the addition of Coda's involvement. (ECF No. 42-3.)

1

liability.² (ECF No. 42.) Defendants filed a Response arguing that the Motion should be denied because amendment would be futile. (ECF Nos. 48.) For the reasons that follow, the Court grants the Motion in part and denies it in part.

I

A

After the time for amending pleadings as a matter of course has passed, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts should "freely give leave" to amend when "justice so requires." *Id.* Courts have discretion in denying such requests "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."³ *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (quoting *Burlington Coat Factory*, 114 F.3d at 1434). Where amendment would be futile, "that alone is sufficient ground to deny leave to amend." *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).

---

² Plaintiffs attached their proposed Amended Complaint to their Motion. *See* (Proposed Am Compl., ECF No. 42-3.)

³ Defendants do not argue that Plaintiffs unduly delayed their request to amend or that amendment would prejudice the Defendants.

B

For the claims in the proposed Amended Complaint to survive dismissal under Rule 12(b)(6), they "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

II

Plaintiffs' Motion proposes to add the following claims: violations of the UTPCPL (Count I) and breach of implied warranty of merchantability (Count IV) against Coda, as well as civil conspiracy (Count V) and alter ego and/or single entity liability (Count

3

VI) against all Defendants.  (ECF No. 42.)  The Court addresses each proposed claim in turn.

A

Count I of the proposed Amended Complaint alleges violations of the UTPCPL against Coda.  (Proposed Am. Compl. ¶¶ 84–98, ECF No. 42-3.)  The UTPCPL prohibits unfair methods of competition and deceptive acts or practices in the conduct of trade or commerce.  *See* 73 P.S. § 201-3.  The Act provides a private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property."  *Id.* § 201-9.2(a).  Under the UTPCPL's catch-all provision, it is unlawful for a defendant to engage in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  *Id.* § 201-2(4)(xxi).  To state a claim under the catch-all provision, the plaintiff must allege: "(1) a deceptive act that is likely to deceive a consumer acting reasonably under the circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss."  *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014) (citations omitted).  A plaintiff must do more than simply allege a causal connection between the misrepresentation and the harm; rather, the plaintiff must allege "that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation."  *Id.* (quoting *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 2013 WL 3380590, at *6 (E.D. Pa. July 8, 2013)).

Plaintiffs' UTPCPL claim against Coda could not withstand a motion to dismiss, such that amending the Complaint to include this allegation would be futile.  Plaintiffs

fail to allege plausible facts showing that Coda engaged in deceptive acts or that Plaintiffs justifiably relied on those acts. The only alleged deceptive acts or misrepresentations came from Jaxon or Richter (in his capacity as a manager for Jaxon). (Proposed Am. Compl. ¶¶ 55–61, 65, 76–78.) Specifically, Richter allegedly stated that "he 'stands behind' everything Defendant Jaxon Home does" when he made personal assurances to oversee the project. (*Id.* ¶¶ 60–61.) Plaintiffs also allege that Richter, "on behalf of Jaxon Home," falsely advised that the damaged furniture would be repaired. (*Id.* ¶ 76.)

Plaintiffs do not allege, however, that Coda engaged in any deceptive acts, or that Richter did so on behalf of Coda. Plaintiffs argue that they have alleged enough facts to state a claim against Coda because Richter made "numerous false promises" in his role "as the owner of Coda as well as the agent/or owner of Jaxon." (Reply 2, ECF 50.) Even when drawing all reasonable inferences in Plaintiffs' favor, however, the only allegations made against Richter involve representations he made on behalf of Jaxon. *See* (Proposed Am. Compl. ¶¶ 60–61, 76). Because Plaintiffs provide no factual allegations that they purchased the furniture because of Coda's misrepresentations, Plaintiffs also fail to allege justifiable reliance.

B

Plaintiffs next allege that Coda breached its implied warranty of merchantability by manufacturing, upholstering and assembling furniture that was not "fit for the ordinary purposes for which such goods are used." (Proposed Am. Compl. ¶¶ 109–114.) The implied warranty of merchantability serves to protect buyers from loss where the goods purchased are below commercial standards. *Borden, Inc. v. Advent Ink Co.*, 701

A.2d 255, 258 (Pa. Super. Ct. 1997).  Pennsylvania's Commercial Code codifies this warranty, stating that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  13 Pa. Con. Stat. § 2314(a); *see Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1198, 1203–04 (Pa. Super. Ct. 1991) ("[F]or recovery for breach of implied warranties, a party need not prove 'privity of contract.'").  For goods to be merchantable, they must, among other things, be "fit for the ordinary purposes for which such goods are used."  13 Pa. Con. Stat. § 2314(b).  The concept of merchantability "does not require that the goods be the best quality;" rather,

> [I]t does require they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used.

*Gall v. Allegheny Cty. Health Dep't*, 555 A.2d 786, 789 (Pa. 1989) (citations omitted).  A plaintiff must show that the product was defective and can do so by proving that it "functioned improperly in the absence of abnormal use and reasonable secondary causes." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) (citations and internal quotation marks omitted).

Plaintiffs allege that Coda "manufactured, upholstered, assembled or altered" furniture that was "not fit for the intended or suited for the purposes they were designed for." (Prop. Am. Compl. ¶¶ 46–47, 111–113.)  Specifically, Plaintiffs claim that the Fendi dining room chairs were "unstable, collapsed and not suited for sitting." (*Id.* ¶¶ 69(h); 113.)  As alleged, these chairs lacked that "inherent soundness which makes them suitable for the purpose" of sitting.  *Gall*, 555 A.2d at 789.  Defendants contend that Plaintiffs fail to state a claim for breach of implied warranty of merchantability

because Richter stated in his deposition that Coda did not manufacture the Fendi chairs in Bali. (Defs.' Resp. 4, ECF No. 48.) That may be so, but at this stage, Plaintiffs have alleged enough plausible facts that Coda assembled or altered the chairs in such a way that caused them to be unsuitable for their ordinary purpose. Plaintiffs may accordingly amend their Complaint to include a claim for breach of implied warranty for merchantability against Coda.

C

Count V of the proposed Amended Complaint alleges that Jaxon, Coda and Richter engaged in a civil conspiracy to "fraudulently conceal[ ] assets from creditors or aggrieved customers." (Proposed Am. Compl. ¶ 116.) A civil "conspiracy is a combination or agreement between two or more persons to do an unlawful thing, or to do a lawful thing in an unlawful manner." *Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa. 1947). To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege the following: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damages." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987–88 (Pa. Super. Ct. 1997)). Malice—*i.e.*, the intent to injure—is also an essential element of a civil conspiracy claim. *Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 113, 143 (Pa. Super. Ct. 2006) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)). In addition, civil conspiracy "requires a separate underlying

tort as a predicate for liability."[4] *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 & n.7 (3d Cir. 1999) (collecting cases).

Plaintiffs fail to state a claim for civil conspiracy, such that amending the Complaint to include Count V would be futile. Plaintiffs allege no facts to support the conspiracy's underlying tort of fraudulent concealment, so the civil conspiracy claim cannot stand on its own. Plaintiffs also fail to allege anything other than bald, conclusory allegations that Defendants acted with a common purpose or took overt acts in pursuit of their common goal to fraudulently conceal assets. Such "[c]onclusory assertions of fact and legal conclusions are not entitled" to the presumption to truth. *Schuchardt*, 839 F.3d at 347.

D

Plaintiffs seek to bring a claim against all Defendants for "alter ego/single enterprise entity" liability in Count VI of the proposed Amended Complaint. (Proposed Am. Compl. ¶¶ 119–122.) Under these two theories of liability, Plaintiffs attempt to pierce Jaxon's corporate veil as a means of imposing liability on Coda.

1

Pennsylvania law "carries a strong presumption against piercing the corporate veil." *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 816 (Pa. Super. Ct. 2017).

---

[4]   Fraudulent concealment—the underlying tort at issue here—is grounded in Section 551 of the Restatement (Second) of Torts, and the plaintiff must show: "(1) [Defendant caused] an omission; (2) the omission was material to the transaction at hand; (3) the omission was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) the omission was made with the intent of misleading another into relying on it; (5) the plaintiff justifiably relied on the omission; and (6) the resulting injury was proximately caused by the reliance." *Marcum v. Columbia Gas Transmission, LLC*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 n.12 (Pa. 1994)). The plaintiff must also show a special relationship between the parties that gives rise to the duty to speak. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995). Fraudulent concealment claims must be alleged with particularity. *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984); Fed. R. Civ. P. 9(b).

The scope of the alter ego theory to pierce the corporate veil, is limited to assessing liability against a corporation's shareholders, or here, the limited liability company's members.  *Lomas v. Kravtiz*, 130 A.3d 107, 216 (Pa. Super. Ct. 2015) (en banc) ("Piercing the corporate veil provides a means of assessing liability for the acts of a corporation against an equity holder in the corporation." (citation and internal quotation marks omitted)); *see Mark Hershey Farms,* 171 A.3d at 816 ("[W]hen it is appropriate to pierce the corporate veil, it is the shareholder, and not some other entity, who is held liable.").  Plaintiffs do not allege that Coda is a member of Jaxon.  Rather, Jaxon is "solely owned" by Victoria Richter.  (Proposed Am. Compl. ¶¶ 16, 20.)  Because Plaintiffs do not allege that Coda is a member or owner of Jaxon, Plaintiffs' alter ego theory of liability fails.

2

The alter ego theory is distinct from the single entity or enterprise theory of liability.  Under the latter, "two or more corporations are treated as one because of (1) identity of ownership, (2) unified administrative control, (3) similar or supplementary business functions, (4) involuntary creditors, and (5) insolvency of the corporation against which the claim lies."  *Miners, Inc. v Alpine Equip. Corp.*, 722 A.2d 691, 695 (Pa. Super. Ct. 1998).  The Pennsylvania Supreme Court, however, has yet to adopt the single entity theory of liability.  *Mortimer v. McCool*, 2019 WL 6769733 (Pa. Super. Ct. Dec. 12, 2019) (citing cases stating that Pennsylvania has not recognized the single entity theory).  Because it remains an open question of law not yet determined by the Pennsylvania Supreme Court, it is the Court's job to predict whether Pennsylvania's highest court would adopt single entity liability.  *See Dilworth v. Metro. Life Ins. Co.*,

9

418 F.3d 345, 349 (3d. Cir. 2005). The Court need not do so, however, because Plaintiffs nonetheless fail to plead all the requisite elements of the claim.

Plaintiffs fail to allege sufficient facts to establish the first and fourth elements of single entity liability: identity of ownership between Jaxon and Coda, and that Plaintiffs were involuntary creditors. *See Miners*, 722 A.2d at 695. As alleged, Victoria Richter is the sole owner of Jaxon, and Braden Richter is Coda's sole owner. (Proposed Am. Compl. ¶¶ 16, 20, 23.) The two companies accordingly do not share identical ownership. Plaintiffs also fail to allege that they were involuntary creditors, nor does it appear that they could. An involuntary creditor is one "who did not rely on anything when becoming [a] creditor," such as a tort victim. *Macready v. TCI Trans Commodities, A.G.*, 2011 WL 4835829, at *8 (E.D. Pa. Oct. 12, 2011) (citation and internal quotation marks omitted). Plaintiffs, in contrast, voluntarily entered into a sales contract with Jaxon for custom-made furniture. *See* (Proposed Am. Compl. ¶ 62).

An appropriate Order follows.[5]

---

[5] Defendants reference claims in their Response that go beyond what Plaintiffs seek to add in their proposed Amended Complaint. Specifically, Defendants challenge the sufficiency of two claims alleged in the original Complaint—the breach of express warranty and breach of contract claims. Defendants could have moved to dismiss these claims, but have not done so. Though had they done so, the allegations would survive a Rule 12(b)(6) challenge.

In their breach of warranty claim, Plaintiffs allege that Defendants provided a lifetime warranty on all non-upholstered furniture and a limited warranty on upholstered furniture, both of which Defendants purportedly breached by providing defective products. (Proposed Am. Compl. ¶¶ 99–104.) According to Defendants, Plaintiffs fail to state a claim because all the damages occurred during shipping or transit, for which Defendants contend there is no warranty coverage. *See* (Defs.' Resp. 3). Plaintiffs, however, have provided sufficient facts that at least some of the furniture was defectively manufactured. *See* (Proposed Am. Compl. ¶¶ 67–72). Plaintiffs claim, for example, that the Fendi chairs are "too light and top over, contrary to the design specifications," which would have been the result of a manufacturing defect. (Proposed Am. Compl. ¶ 69(h).)

Defendants also argue that Plaintiffs fail to allege sufficient facts to state a breach of contract claim against Coda. Defendants are mistaken; Plaintiffs only bring that claim against Jaxon and have alleged sufficient facts for it to proceed. (Proposed Am. Compl. ¶¶ 105–108.)

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.